## NAHUM PACKARD *vs.* JAMES M. USHER.

By the written conditions of a sale by auction, the vendor agreed "to sell and convey," and the purchasers "to purchase and pay for" certain lots of land; "the purchase money to be paid, one half in ten days from the date of the sale, when said purchasers will receive a bond from said vendor, conditioned to convey to each purchaser the lots by him purchased when the other half of said purchase money shall be paid, and the other half of said purchase money to be paid in six months from the date of the sale, when a deed of warranty will be given; purchasers wishing to pay in cash all the purchase money may do so, and receive immediately the warranty deed as above described; ten days will be allowed to purchasers to look at the title, and for the proprietor to make his arrangements to deed the same." *Held,* that the vendor could not maintain an action against a purchaser, upon this agreement, without proving that he had, at the expiration of ten days after the sale, a good title to the lot bid off by this purchaser; although at that time he tendered to the purchaser a bond for a warranty deed of that lot in six months from the sale, upon the purchaser's fulfilling the conditions, and the latter made no objection then to the title, nor to the form of the bond.

ACTION OF CONTRACT, commenced on the 26th of July 1854, upon a written agreement to purchase fifteen lots of land sold by auction by the plaintiff to the defendant on the 19th of June 1854, upon certain conditions entered in the auctioneer's book, and signed by the plaintiff and by the defendant and other purchasers, the material parts of which were as follows :

"Said Packard is to sell and convey, and said subscribers are to purchase and pay for, upon the terms herein contained, certain lots of land situated in West Cambridge, and belonging to said Packard." "Each of such lots of land will be conveyed subject to a mortgage, the amount of which is hereafter designated in its proper column, opposite the number of each lot. But purchasers wishing to pay the entire purchase money, and have no mortgage on his lot or lots, before the time for giving the bond herein described, may do so. Said mortgages will be payable, one half thereof in one year, and one half thereof in two years from their date. The purchase money, over and above the amount of said mortgages, will be paid, one half in ten days from the date of the sale, when said purchasers will receive a bond from said Packard, conditioned to convey to each purchaser the lot or lots by him purchased when the other half

of said purcnase money, over and above said mortgages, shall be paid as herein set forth, and the other half of said purchase money shall be paid in six months from the date of the sale, when a deed of warranty will be given; the purchasers, by proper conditions therein contained, being held only to pay and discharge said mortgages according to their terms. But purchasers wishing to pay in cash all the purchase money, over and above said mortgages, may do so, and receive immediately the warranty deed as above described. All the purchase money, in every case, to be on interest from the date of sale." " Ten days will be allowed to purchasers to look at the title, and for the proprietor to make his arrangements to deed the same."

At the trial, before *Dewey*, J., it appeared that, at the time of the sale, there was an outstanding mortgage, covering the land pur chased by the defendant and other lands of the plaintiff, for eight thousand dollars, (a much larger amount than the sum of the amounts designated in the conditions of sale opposite the lots purchased by the defendant,) which the plaintiff, by proper covenants in the deed under which he claimed title, had assumed and was bound to pay, and had since made arrangements to release the defendant's lots from, and which was discharged on the 20th of March 1855; that an attorney of the plaintiff, on the 10th of July 1854, tendered to the defendant a bond to deliver to him in six months " a good and sufficient warranty deed of said premises," upon his giving a mortgage thereon for the amount designated in the conditions of sale, and paying the residue of the purchase money according to those conditions, and told him that if he did not like the bond the plaintiff would make one to suit him; that the defendant took the bond and read it, and then left, saying he would see the plaintiff, but said nothing about the title or the insufficiency of the bond tendered.

The defendant requested the court to instruct the jury that the plaintiff had not at the expiration of ten days from the sale, nor at any time before the commencement of this action, such a title to the land, that he could require the defendant to accept and pay for it in conformity with the conditions of the sale.

The judge declined so to rule, and reserved this and other ques
tions for the consideration of the full court. The verdict was
for the plaintiff.

*T. S. Harlow*, for the defendant.

*B. Dean*, for the plaintiff.

DEWEY, J. In the present aspect of this case, the court have
only found it necessary to consider the ground of the defence
arising from the want of title in the plaintiff within the period
of ten days from the sale. Upon that point, the court are of
opinion that the defendant could not be required to take the
land, and make the payments stipulated therefor by the alleged
auction sale, the plaintiff not having had, during the time allowed
for examination of the title, and for the plaintiff to make his
arrangements to give a conveyance thereof, a good title, but only
an estate incumbered by a mortgage.

The recent case of *Mead* v. *Fox*, 6 Cush. 199, seems directly
in point, and decisive of this question. That, like the present,
was a public auction sale, in which many lots were offered for
sale, and sold to various individuals as bidders, under certain
written stipulations to be signed by the bidders. There, as
here, ten days were allowed the purchasers to examine the
title. Here was also the further provision, that the seller might
have " ten days to make his arrangements to deed the same ; "
implying, as we suppose, to remove any incumbrances, and be
prepared to give a good title. This stipulation in the terms of
the contract renders it quite plain that this was not a mere con-
tract to take a deed with warranty, but that the parties con-
tracted with reference to a good title.

The obvious character of this contract excludes any applica-
tion of cases like that of *Tinney* v. *Ashley*, 15 Pick. 546, and
others of that class, where the terms of the contract have been
supposed to be satisfied by a mere warranty deed. To entitle
the plaintiff to enforce this contract against the defendant, he
was required, within the ten days allowed for this purpose, to
qualify himself to be able to give a good unincumbered title to
the purchaser. This he did not do. There was, after that
period, an outstanding mortgage of a large amount, covering the

lots sold to the defendant. Whatever verbal arrangements he had made respecting the same, he had acquired no legal discharge, nor any stipulations for a prospective discharge from the mortgagee, until long after the period of ten days, and no actual discharge of the same when the present suit was instituted.

There were two other facts shown in the case of *Mead* v. *Fox*, which do not appear in the present case, but which, as it seems to us, do not affect the result. It appeared in evidence in that case, that the defendant had in fact examined the records and found the title incumbered; and it also appeared that the plaintiff had tendered a warranty deed to the purchaser. It does not seem to be material for the defendant to learn the fact of the incumbrance from the registry of deeds. The information may as well be received from other sources; the only material point being whether it was so incumbered, which is not a matter of controversy in the present case.

It is also said that, in the present case, the performance of the contract on the part of the plaintiff might perhaps have been satisfied by his giving a bond for a future deed. This is so; but the defendant had also the right to receive a deed in the first instance, if he paid the whole of the excess above the sum to remain on mortgage, or in the event of his paying the whole of the purchase money.

The case of *Howland* v. *Leach*, 11 Pick. 151, cited on the part of the plaintiff, does apparently sustain the plaintiff so far as to show that, where there was an actual tender of a warranty deed to a vendee upon a contract to purchase land, and an absolute refusal on the part of the vendee to accept the same and pay the purchase money, the party was not allowed to set up in defence an outstanding incumbrance on the premises; it also further appearing that the plaintiff, at the time of offering the deed, stated that the parties holding the incumbrances on the title were then ready to discharge the same, and such appearing to have been the fact. In that case, there was no stipulation in the contract as to time to examine or perfect titles; and there was a present offer, on the day of tender of the deed, that all incumbrances should then be discharged. As that was a case

of mutual covenants to be performed at the same time, all that was required of the defendant was to offer to perform on his part, upon the vendor's doing all he had offered, and this would have rendered it certain that he received from him a good title But he absolutely refused to perform the contract on his part, and the court held, under those circumstances, that his defence was unavailing. The present case is however, in all its features, much more like the case of *Mead* v. *Fox*, 6 Cush. 199, and applying the principles of that decision, the plaintiff, upon the facts reported, has failed to show a legal ground of action against the defendant.  *New trial ordered.*